## THE STATE BANK v. EWING.

*A.* died testate in the year 1854. One clause of his will was in these words: " The homestead, on lots Nos. 7, 8, 10, 11 and 12, block No. 18, *Ewing's* addition to the town of *Fort Wayne,* and north half of back lot No. 3, containing about eight acres, part of the east half N. W. qr. Sec. 11, Town.

38, R. 12, E. (balance to *William G. Ewing*, Jr., as hereafter provided) and the rents and profits of one half of all the improved or productive real estate that I own with *Geo. W. Ewing*, or otherwise, or an amount *equal to one half of all my interest therein*, to be set apart as dower for my beloved wife, *Esther Ewing*, during her life; and first, out of said rents, the taxes and necessary repairs are to be paid: and *likewise*, to have half my share of any dividends I may be entitled to on bank stock; and likewise so much of the furniture of the homestead as she will need and desire to keep, say one half or two thirds, with a horse and buggy and sleigh, and a wagon and a pair of horses and necessary harness, and two cows,—likewise one cart and harness. The one third or excess of furniture, that she will not need, I desire her to give to our adopted son, *William G. Ewing*, Jr., if he is alive—if not, then to my nieces, *Mary L., Lavina Ann*, and *Catherine Esther Ewing*. Said *William G. Ewing*, Jr., to have my best saddle horse, saddle and bridle, and my clothing. My gold watch I give to my nephew, *William G. Ewing*, of Cincinnati." The widow elected to take under the law, then in force, her interest in the real estate of which her husband died seized, instead of the provision made for her by the will, in lieu of such legal interest; and at the same time, so far as she could, elected to take the personal property bequeathed to her by the will.

*Held*, that words occurring more than once in a will, must be presumed to be used always in the same sense, unless a contrary intention appears by the context, or unless the words be applied to different subjects; and as the word "*likewise*" is often used in this will in the sense of "*also*," that must be taken to be its meaning, in the clause introducing the bequest of personal property to the widow.

*Held*, also, that considering the word "likewise" to mean "also," and the fact that the technical word "dower," in the phrase "to be set apart as dower," is used after the devise of the interest in the realty, and before the bequest of the personalty, and the further fact that if the bequest of the personalty to the widow is considered as a life estate only, it would prevent a final disposition of the personal property so bequeathed, (no other disposition being made of it,) it would appear to be "plain," within the meaning of the statute, that the phrase "to be set apart as dower," relates only to the realty, and not to the disposition of the personalty.

*Held*, also, that the widow took an absolute title to the personal property bequeathed to her, notwithstanding her renunciation of the provisions of the will, as to the realty.

APPEAL from the *Allen* Circuit Court.

HANNA, J.—This was an action by the appellee, who was the plaintiff, against "The State Bank of *Indiana*," to recover certain dividends on bank stock, to which, it is alleged, she

Nov. Term,
1861.

THE STATE
BANK
v.
EWING.

*Tuesday,*
*November* 26.

Nov. Term, 1861.

THE STATE BANK

v.

EWING.

was entitled under the will of her late husband, *William G. Ewing*, who died in the year 1854. There was a finding and judgment for the plaintiff. The will contains this provision:

"The homestead on lots Nos. 7, 8, 10, 11 and 12, block No. 18, *Ewing's* addition to the town of *Fort Wayne*, and north half of back lot No. 3, containing about eight acres, part of the east half, N. W. qr., Sec. 11, Town. 38, Range 12, E. (balance to *William G. Ewing*, Jr., as hereafter provided,) and the rents and profits of one half of all the improved and productive real estate that I own with *George W. Ewing*, or otherwise, or an amount equal to one half of all my interest therein, *to be set apart as dower*, for my beloved wife, *Esther Ewing*, during her life; and first, out of said rents, the taxes and necessary repairs are to be paid; and *likewise to have half my share of any dividends I may be entitled to on bank stock ;* and likewise so much of the furniture of the homestead as she will need, and desire to keep, say one half or two thirds, with a horse and buggy, and sleigh, and a wagon and pair of horses, and necessary harness, and two cows, likewise one cart and harness. The one third, or excess of furniture, that she will not need, I desire her to give to our adopted son, *William G. Ewing*, Jr., if he is alive, if not, then to my neices, *Mary L., Lavina Ann*, and *Catherine Esther Ewing*. Said *William G. Ewing*, Jr., to have my best saddle horse, saddle and bridle, and my clothing. My gold watch I give to my nephew, *William G. Ewing*, of Cincinnati."

The evidence proves that *William G. Ewing*, the testator, at his death, was seized of real estate worth $100,000, and was the owner of personalty to a large amount, independent of that described in the bequest to his wife. And it was also proved that *Esther Ewing*, after the death of her husband, elected to take under the law, then in force, her interest in the real estate of which he died seized, instead of the provision made for her in the will, in lieu of dower; and at the same time, so far as she could, elected to take the personal property so devised to her. In this case, the only question to settle is, does the election thus made, deprive

the widow of all the property given her by the will? If it does, she can not, of course, recover the dividends of the bank stock. But the appellee argues that, although "she is not entitled to any lands, or any pecuniary, or other interest made for her by the will, in lieu of her right to the lands of her husband," still, "she is entitled to the personal property, because the will plainly shows that she should have it, as an independent bequest, not to be affected by any election on her part, in reference to the realty."

The statute "regulating the apportionment of estates," says: "If lands be devised to a woman, or a pecuniary or other provision be made for her by the will of her late husband, in lieu of her right to lands of her husband, she shall make her election, whether she will take the lands so devised, or the provision so made, or whether she will retain the right to one third of the lands of her late husband; but she shall not be entitled to both, unless it *plainly* appears by the will, to have been the intention of the testator that she should have such lands, or pecuniary or other provision thus devised or bequeathed, in addition to her right in the lands of her husband." 1 R. S., § 41, p. 255.

As has been seen, the testator having devised "the homestead," (describing it,) and one half the rents of certain lands, "to be set apart as dower," for his, the testator's wife, proceeds thus: "and likewise to have one half of any dividends I may be entitled to on bank stock." If the phrase, "to be set apart as dower," applies alone to the devise which precedes it, there is reason for the construction assumed by the appellee; but the appellant insists that the word "likewise," in the connection in which it was used, applies the phrase in question, alike, to all the property devised to the widow by the will. *Walker* defines the word "likewise" thus: "in like manner, also, moreover, too." Do these definitions connect that part of the will by which the personalty is bequeathed to her, with the previous devise of the realty, so as to make the whole provision a unit? At common law, the rule is, "that a widow can not take a provision made by the will, *expressly* in lieu of dower, and at the same time take her dower. In such case, she must *elect* to take one or the other.

But it was presumed that the testator intended to give her the provision, in addition to the dower, unless *it p'ainly* appeared from the will, that it was his intention to give her the provision in lieu of dower." 2 Story's Eq. Jur., § 1088. This rule, however, is not, to its full extent, in force in this State; because, as has been seen, the statute presumes an intention to give such provision in lieu of the widow's interest in the realty, unless it *plainly* appears, from the will, that the testator intended to give it in addition to such interest. Thus, in *East* v. *Cook*, 2 Vesey, Sen., it is said, "if a man should, by his will, give a child, or other person, a legacy, or portion, in lieu or satisfaction of a particular thing expressed, that would not exclude him from other benefits, although it might happen to be contrary to the will, for courts of equity will not construe it as meant in lieu of every thing else, when the testator has said it is in lieu of a particular thing."

Jarman on Wills, in his chapter on general rules of construction, presents a summary of the several rules of which he had treated in detail, some of which we will notice, namely:

"VII. All the parts of a will are to be construed in relation to each other, and so as, if possible, to form one consistent whole."

"X. Courts will look at the circumstances under which the devisor makes his will; as the state of his property, of his family, and the like."

"XVI. Words, in general, are to be taken in their ordinary and grammatical sense, unless a clear intention to use them in another can be collected, and that other can be ascertained; and they are, in all cases, to receive a construction which will give to every expression some effect, rather than one that will render any of the expressions inoperative; and of two modes of construction, that is to be preferred which will prevent a total intestacy.

"XVII. Where a testator uses technical words, he *is* presumed to employ them in their legal sense, unless the context clearly indicates the contrary.

"XVIII. That words occurring more than once in a will, shall be presumed to be used always in the same sense, unless a contrary intention appears by the context, unless the words be applied to different subjects. And on the same principle, where a testator uses an additional word or phrase, he must be presumed to have an additional meaning." Keeping in view these rules, and our statute, we are prepared to examine the will of the testator.

It is apparent from the will, that he died without issue, leaving a brother and sisters, nephews and nieces, and an adopted son; that he left a large estate, real and personal, and a heavy business in the hands of partners, which was to be closed up at a period not beyond five years, and after the payment of debts, the residue of the proceeds of the personalty was to be distributed, as designated in the will, among the persons above referred to. There is no provision, other than the one herein quoted, whereby any of the personalty, or its proceeds, was to pass to the widow; but there is a provision to the effect, that his estate, real and personal, subject to other provisions of the will, should be divided into fifteen parts, of which certain persons, not including the widow, were to take two, and others one, part or share. From the whole context, it is manifest that it was the intention of the testator, by the will, to make a final disposition of all his property, and it appears to do so, as to all except the personal property devised to the appellee, if she took but a life interest therein. No disposition of it, after her death, is made; but there is a special disposition of the homestead, after such event.

The first direction as to property is, that the testator's funeral expenses shall be paid, first, "and *likewise*" all his legal and just debts, as afterward provided.

Then follows the provision for the appellee; then that his adopted son should have certain interests during the life of appellee, and after her death; then follows the clause directing the manner of general distribution. The will then reserves from such general distribution, certain designated property, which is then bequeathed, to-wit: to his adopted son, " for a residence," .... " *likewise*" one store room, and 20

Nov. Term, 1861.

THE STATE BANK v. EWING.

by 60 feet of ground on *Calhoun* street, &c., and *likewise* a farm," &c.

To *Charlotte Walker*, there is bequeathed a lot, to be carved out of a designated out-lot in *Fort Wayne;* or, if she prefers it, a piece of some lot in *Logansport*, "of the value of three hundred dollars; and, *in like manner*, a like lot, of like value, to my niece, *America Ewing*," &c. To *William* and *Truman Griffith*, each, there is bequeathed "a good eighty-acre tract of land, to be selected and set apart by my executors; and, *in like manner*, an eighty-acre tract of land to *William Wallace.*"

Construing the various provisions of the will, in which the word "*likewise*" occurs, with a view to the rules above quoted, and it seems to result that the first definition given by *Walker*, to wit: "*in like manner*," can not maintain; but that the same was more probably used with reference to its second definition, to wit: "also." This construction is manifest, when we look to other parts of the will, in which the words "in like manner" are used to convey a different meaning from what the word "also" would convey.

Considering the word "*likewise*" as meaning "also," in the clause of the will first above quoted; the state of the testator's property, and of his family; the fact that the technical word "dower," in the phrase, "to be set apart as dower," is used after the devise of the interest in the real property, and before that of the personalty; and the further fact, that if the bequest is to be considered as a whole, taken as such, as "dower," such construction would prevent the final disposition of the personal property so bequeathed to the wife, it would appear to be "plain," within the meaning of the statute, that the phrase, "to be set apart as dower," applies only to that which precedes it, and not to the disposition of the personalty. Giving the will this construction, makes provision for the final disposition of all the property, real and personal, and there would not, as to any of it, be an intestacy.

Regarding it in this light, we are disposed to give such effect to the will as shall make it operative to the final disposal of all the estate; and, consequently, so construe it

as to give the appellee an absolute right to the personal property bequeathed to her, notwithstanding her renunciation of the provisions of the will, as to the realty.

*Per Curiam.*—The judgment is affirmed, with 2 per .cent. damages and costs.

*John B. Howe* and *L. M. Ninde,* for the appellant.

*R. Brackenridge,* Jr., *J. E. McDonald* and *A. L. Roache,* for the appellee.